United States District Court
Southern District of Texas
**ENTERED**
September 25, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RICKY WAYNE BECKETT, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:17-CV-0216 |
| § | |
| VIRGIL G MCMULLEN, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

In this civil rights suit, Plaintiff Ricky Wayne Beckett (former TDCJ #1883225) proceeds *pro se* and *in forma pauperis*. At the time he filed suit, Beckett was an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). Plaintiff alleges improper confiscation of legal property and other claims. Defendants McMullen, Banks, and Swafford have filed a motion for summary judgment (Dkt. 21), to which Plaintiff has responded (Dkt. 27, Dkt. 28). The motion is ripe for consideration. Having reviewed the evidence submitted, the parties' briefing, the applicable law, and all matters of record, the Court concludes that summary judgment should be **GRANTED** for Defendants and that all of Plaintiff's claims must be **DISMISSED** for the reasons that follow.[1]

---

[1] Several other defendants appear on the Court's docket sheet, in particular, "TDCJ Staff Warden Benjamin"; "Major of Staff John Doe"; Derrick T. Broussard; and "Property Officer Mrs. Jones." Plaintiff makes no allegations specific to these parties and the claims against them also will be dismissed.

## I. BACKGROUND

Beckett complains in this lawsuit of events that occurred while he was incarcerated at TDCJ's Stringfellow Unit. He brings suit against Virgil McMullen, whom he identifies as the senior warden at the unit; Brandi T. Banks, whom he identifies as a librarian and "head supervisor"; and Tammy L. Swafford, whom he identifies as an assistant librarian (Dkt. 1, at 1-2).

Beckett alleges that, on November 30, 2016, he "suffered irreplaceable loss of his legal documents," including books and court documents that Banks and Swafford confiscated from his legal storage box (Dkt. 1, at 4, 6-8). He also alleges that McMullen failed to "take disciplinary or other action to curb the known illegal action" by Banks and Swafford (*id*. at 6). Along with the legal materials, Beckett states that officials confiscated "all of his commissary and seven unopened typewriter ink cartridges and plaintiff's night lamp . . . without itemized listing of said confiscated items" (*id.* at 4).[2] Plaintiff alleges that "Stringfellow Unit Officials returned very little and not all of his most important legal documents" and "very little of [his] property" (*id*. at 5). He also states that officials failed to "provide a meaningful explanation" for their actions (*id*. at 14).[3]

---

[2] Plaintiff presents a document purporting to list his commissary receipts in November 2016, and showing transactions totaling $28.45 (*id.* at 19-20). A handwritten note presumably written by Beckett states that he also purchased "7 ClearTech Ink Cartridges @ $1.75" (*id.* at 20).

[3] Plaintiff also has presented sworn statements of other inmates who state that they witnessed the November 30, 2016, events between Beckett, Banks, and Swafford (Dkt. 28-2, Dkt. 28-3). These statements were prepared in 2018 (*id*.).

Defendants agree that a confiscation of some of Plaintiff's property occurred on November 30, 2016. *See* Dkt. 21-1, at 11 (offender property inventory dated Nov. 30, 2016). They state that, because Beckett's property did not fit in his storage container, it was confiscated and taken to the property room (Dkt. 21, at 2).

Plaintiff grieved the confiscation of his property through TDCJ's two-step administrative grievance procedure and was denied relief at both stages (Dkt. 1, at 3-5).[4] The grievance records for Grievance No. 2017052375 demonstrate that, after an investigation, TDCJ determined that Beckett's property had been confiscated on November 30, 2016 according to institutional policy and, moreover, that Beckett had consented to the destruction of his property on December 16, 2016 (Dkt. 21-1, at 3). TDCJ's response to Beckett's Step Two grievance provided detail about the events:

> [P]olicy requires that offenders need only consume one-half of their available locker space via the possession of unique legal materials in order to qualify for an additional legal box. Upon a standard 90 day Legal Locker Box Review, you, however, did not possess sufficient material to fill one-half of your general locker box. As such, you no longer qualified for possession of that box. Incidentally, staff were correct in their assessment of qualifying legal materials. Specifically, per policy, offenders may not include duplicate copies of legal materials, to include texts available for offender review within the facility Law Library, as part of their unique legal materials. Since you no longer qualified to possess an additional legal storage box, you were correctly directed to store all your property in accordance to policy. You, however, refused to comply. Accordingly, all improperly stored property was confiscated pending your compliance. You were then given the option to mail the property to an outside address, have a visitor pick up the property, or to destroy the property. You voluntarily cho[]se to destroy the property. As such, this investigation finds no evidence of staff misconduct.

---

[4] Plaintiff states that he also wrote the Fifth Circuit on December 9, 2016 regarding the confiscation of his legal documents (Dkt. 1, at 4).

(*Id.*). Defendants have supplied a form signed and dated by Plaintiff on December 16, 2016, which is titled "Disposition of Confiscated Offender Property" (*id.* at 10). On the form, Plaintiff selected the third option for disposition of his property, which read "I request that TDCJ dispose of this property" (*id.*). Plaintiff alleges that he signed the form under duress (Dkt. 27, at 7).

Plaintiff claims that the confiscation of his legal documents denied him access to the courts because it led to the dismissal of his appeal (Appeal No. 16-20607) that had been pending in the Fifth Circuit (Dkt. 1, at 11). Court records reflect that Plaintiff had filed a habeas corpus action, Civil Action No. 4:15-CV-1691, which was dismissed by the Honorable Alfred H. Bennett on October 14, 2015. *See* Dkt. 21-2, at 3 (docket sheet in 4:15-CV-1691). Approximately eleven months later, on or about September 7, 2016, Plaintiff filed a notice of appeal, which was docketed with the district court on September 12, 2016 (*id.*). A second notice of appeal was docketed on September 19, 2016 (*id.*). On January 18, 2017, the Fifth Circuit dismissed the appeal for lack of jurisdiction because Plaintiff's notice of appeal had been untimely. *See* Dkt. 21-3 (order dismissing case, Appeal No. 16-20607); Dkt. 21-2, at 4.

In this lawsuit, Plaintiff requests multiple forms of relief including the return of his property, a declaration that his constitutional rights were violated, and damages in excess of $1 million (Dkt. 1, at 9-10).

## II. STANDARDS OF REVIEW

### A. *Pro Se* Pleadings

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An

issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v.*

*Simbaki, Ltd*., 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. Pro se litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III. DISCUSSION

### A. Constitutional Claims

Plaintiff complains that his rights were violated when his property was confiscated. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex*., 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

#### 1. Official Immunity

TDCJ is a state agency. TEX. GOV'T CODE § 493.001 *et seq*. A claim against an official employed by TDCJ in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ*., 743 F.3d 959, 963 (5th Cir. 2014).

Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

To the extent Plaintiff sues any defendants in their official capacities as state employees, they are entitled to immunity under the Eleventh Amendment from claims for monetary damages. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (extending immunity to TDCJ officers acting in an official capacity). Plaintiff's requests for declaratory or injunctive relief to redress alleged past wrongs by state officials also are barred. *See Green v. Mansour*, 474 U.S. 64, 73 (1985); *Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015); *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

Accordingly, Plaintiff's claims against Defendants in their official capacity are dismissed for lack of subject matter jurisdiction.

### 2. Qualified Immunity

As for claims in Defendants' individual capacities, Defendants have invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and

citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

### 3. Access to Courts

Beckett claims that Defendants denied him access to courts when they confiscated his legal documents because the confiscation led to the dismissal of his appeal in the Fifth Circuit (Dkt. 1, at 11).

Prisoners generally enjoy the constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977); *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). This right "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Jones*, 188 F.3d at 325; *see Clewis v. Hirsch*, 700 F. App'x 347, 348 (5th Cir. 2017). In order to prevail on an access to courts claim, a plaintiff must demonstrate that his position as a litigant was prejudiced by the denial of access to courts. *McDonald v. Steward*, 132 F.3d 225, 230-31 (5th Cir. 1998).

In this case, the confiscation of Plaintiff's property took place on November 30, 2016. At the time, Plaintiff already had filed his notice of appeal in Appeal No. 16-20607. *See* Dkt. 21-2 at 3 (docket sheet for Civil Action No. 4:15-CV-1691 shows that Plaintiff filed notices of appeal on September 12, 2016 and September 19, 2016). The Fifth Circuit later dismissed the appeal for lack of jurisdiction because the notice of appeal had been untimely (Dkt. 21-3). The challenged confiscation could not have delayed the filing of Plaintiff's notices of appeal because, by the time the confiscation occurred on November 30, 2016, Plaintiff already had filed his untimely notices of appeal. Plaintiff therefore was not prejudiced, and his access to courts claim fails. *See McDonald*, 132 F.3d at 230-31.

For essentially the same reasons, Defendants are entitled to qualified immunity. *See Carroll*, 800 F.3d at 169 (qualified immunity analysis requires determination of whether facts, viewed in the light most favorable to the plaintiff, constitute a violation of a constitutional right).

### 4. Due Process

Plaintiff claims that the confiscation of his property violated his rights under the Due Process Clause.

Prison officials may impose reasonable restrictions on the type and amount of personal property that inmates are allowed to possess while in prison. *See McRae v. Hankins,* 720 F.2d 863, 869 (5th Cir.1983); *Long v. Collins,* 917 F.2d 3, 4 (5th Cir.1990). To the extent that Texas prisoners have a right to possess personal belongings, the deprivation of property implicates the Constitution only if such deprivation is

accomplished without due process. *See Parratt v. Taylor,* 451 U.S. 527, 537 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986). When deprivation of property is occasioned by an official policy, an inmate must be afforded some combination of notice prior to the deprivation and an opportunity to be heard. *See Zinermon v. Burch,* 494 U.S. 113, 126 (1990).

In this case, the record demonstrates that Beckett received pre-deprivation due process protections. Defendants have supplied the Court with the inventory of Plaintiff's property completed at the time of the confiscation, which bears Plaintiff's signature. *See* Dkt. 21-1, at 11 (offender property inventory dated Nov. 30, 2016). Moreover, after the confiscation on November 30, 2016, the property was held for over two weeks. TDCJ disposed of the property only with Plaintiff's written consent, as evidenced on the form that Plaintiff signed and dated on December 16, 2016. *See id.* at 10 (selecting "Option 3" which stated, "I request that TDCJ dispose of this property").

Given the summary judgment evidence, and because Plaintiff does not otherwise allege facts showing that his property was confiscated in violation of his due process rights, Banks and Swafford are entitled to summary judgment on Plaintiff's due process claims.

Plaintiff also seeks to hold McMullen liable in his supervisory capacity for alleged due process violations (Dkt. 1, at 14). It is well established that a supervisory official is not liable under Section 1983 for the actions of subordinates on any theory of vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (holding that supervisory officials cannot be held vicariously liable for their subordinates' actions

under Section 1983); *see Iqbal*, 556 U.S. at 677 ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability."). Supervisory officials can be held liable under Section 1983 only if the plaintiff demonstrates (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003). Beckett has made neither showing in this case.

Finally, because Beckett has not demonstrated a genuine issue of material fact as to the violation of a constitutional right, Defendants are entitled to qualified immunity. *See Carroll*, 800 F.3d at 169.

### 5. Retaliation

To the extent Plaintiff intends to bring a separate claim of retaliation, his claim fails. To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *See Jones*, 188 F.3d at 324-25. If an inmate is unable to point to a specific constitutional right that has been violated, the claim will fail. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). To show intent, the inmate must allege more than his personal belief that he is the victim of retaliation. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). The inmate

must produce direct evidence of motivation, or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166.

In this case, Plaintiff alleges that "defendants retaliated against plaintiff for filing grievances and contacting the Attorney General of Notice to File Tort" (Dkt. 1, at 5, 17). Plaintiff does not allege any supporting facts that would support a claim for retaliation under the authority cited above. Defendants therefore are entitled to summary judgment.

B. **State Law Tort Claims**

To the extent Plaintiff brings state law claims against Defendants for theft or negligence, Defendants argue that relief is not available under the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.101 *et seq.*, or the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE § 134.001 *et seq.*

Because the Court has dismissed all claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

C. **Plaintiff's Other Filings**

Plaintiff has filed numerous motions regarding the conditions of his parole following his recent release from TDCJ. *See* Dkt. 32 (seeking court relief from parole officer's alleged "harassment" denying him ten hours per week in the law library); Dkt. 33 (seeking injunctive relief from parole officer's requirement to provide her with a "home plan"); Dkt. 34 (seeking court relief from parole officer's actions limiting him to two hours per week in the law library); Dkt. 35 (seeking injunctive relief from July 2018 "shakedown" in transitional institution); Dkt. 36 (seeking relief from conditions of

parole). Most allegations in these motions are irrelevant to the claims before the Court in this lawsuit regarding the confiscation of Plaintiff's property on November 30, 2016. To the extent Plaintiff complains that he has been denied access to courts to litigate this suit, the motions are denied as moot.

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. The defendants' motion for summary judgment (Dkt. 21) is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice**.

2. All other pending motions are **DENIED as moot**.

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 25th day of September, 2018.

_____
George C. Hanks Jr.
United States District Judge